# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**CHARLES ADAM ST. AMAND**                                                      **PLAINTIFF**

**V.**                                               **NO: 4:06CV48-WAP-EMB**

**BESSIE SCOTT**                                                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

This § 1983 action was initiated by the *pro se* prisoner plaintiff, Charles Adam St. Amand, on March 22, 2006. (Dckt. Entry No. 1.) The Complaint alleges that Defendant Bessie Scott used excessive force against Plaintiff during a July 2005 altercation. The undersigned United States Magistrate Judge conducted an evidentiary hearing in this matter on May 15, 2007. (Dckt. Entry No. 34.) Having considered the evidence submitted during the hearing, the record and the applicable law, I make the following findings and conclusions.

In support of his case, Plaintiff offered only his own testimony and surveillance video recorded at the time of the incident. Plaintiff testified that on the date of the incident he was housed in Unit 32-C at the Mississippi State Penitentiary ("MSP"). He said that during "laundry call," Officer Bessie Scott gave him a black marker to label a blanket he wanted to submit for laundry. Plaintiff said Scott waited outside his cell a few minutes while he labeled the blanket, then told him she would be back. Plaintiff said when Scott returned, he was not finished. He said at this point, Scott demanded the marker. Plaintiff testified that he handed the marker to Scott through the cell bars with his left hand. Plaintiff said while handing the marker through the bars, he asked Scott if he could finish labeling his blanket. By this time, according to Plaintiff, Scott had grabbed hold of the other end of the marker, and they were both holding on to it.

Plaintiff said Scott denied his request and again ordered him to give her the marker. Plaintiff said he continued to plead with her to let him finish. Plaintiff said Scott then stabbed him three times in his left hand with an ink pen she held in her right hand and walked off. He said when he noticed blood dripping from his hand, he reported to another corrections officer on the tier, Captain Porter, that he had been stabbed by Scott and needed medical attention.

Plaintiff testified that Captain Porter left and that approximately thirty minutes later, a "take-down" team came to his cell with riot guns and tear gas. He said he was then taken to a holding tank and issued a Rule Violation Report or "RVR" that charged him with throwing a black marker at Scott. Plaintiff said after an hour and a half, he was transported to Unit 42 Hospital where he was given stitches. He said after being there approximately 30 minutes, he was returned to Unit 32-C.

Plaintiff testified that since the incident, other inmates have attempted to assault and kill him and have threatened him because he filed this lawsuit against Scott. He said he reported the situation, but prison officials have failed to allow him to "red tag" the other inmates and insisted that he was properly housed.[1]

On cross-examination, Plaintiff admitted that Scott asked him to give her the marker at

---

[1] It should be pointed out that these allegations make the basis of two motions for injunctive relief filed by Plaintiff prior to the instant hearing. *See* Dckt Entry No.'s 25 and 27. By Order (Dckt. Entry No. 28) dated April 16, 2007, the staff attorney for MDOC was ordered to investigate Plaintiff's allegations and file a written report with the Court. Notwithstanding the finding of frivolity reported by counsel in his Response (Dckt. Entry No. 29), Plaintiff was transferred to the Pearl River County Jail in Poplarville, Mississippi prior to the evidentiary hearing (Dckt. Entry dated May 15, 2007). As such, Plaintiff's motions for injunctive relief are moot.

least twice and that he refused to do so each time. When asked if he told members of the "take-down" team that he had injured his hand himself, Plaintiff testified that he had not. Also, when asked whether he had received psychiatric treatment while housed at Unit 32-C, Plaintiff admitted he had but denied that he had ever threatened to hurt himself.

In support of her case, Defendant Bessie Scott offered the testimony of Dr. Michael Thomas Lehman, Corrections Officer Pasirro Smith and her own. On direct examination Dr. Lehman, the site Medical Director at MSP, testified that Plaintiff's medical records show he was evaluated and treated by a staff doctor at Unit 42 Hospital on July 21, 2005, at 12:00 a.m. Dr. Lehman said it was noted that Plaintiff had two small puncture wounds on the palm of his left hand but that otherwise an examination of that hand was normal. There was also no indication of nerve, tendon or blood vessel injury. Plaintiff was given three sutures, two sutures in one small wound and one in the other small wound. Plaintiff was prescribed antibiotics and a topical cream and given a tetanus shot. Dr. Lehman opined that there was no way to medically determine the cause of Plaintiff's wounds from an examination of the medical record.

Dr. Lehman further testified that Plaintiff's medical records show he sought treatment for "catching" his left hand in a cell door in January 2006. There was also a sick call request form completed by Plaintiff which indicated that he had thoughts of injuring himself and that he requested a psychiatrist. Dr. Lehman said a psychiatrist noted that Plaintiff was exhibiting an extensive amount of paranoid behavior and that it was questionable whether he had been taking his psychiatric medication.

Dr. Lehman further testified that Scott was also seen by the medical department on the

day of the incident and that there was a notation that she had sustained a bruise on the right hand.

On cross examination, Dr. Lehman testified that the only treatment ordered for Plaintiff on the day of the incident were stitches. On redirect, Dr. Lehman testified that not until about a month after the incident with Scott did Plaintiff begin to complain to medical staff about problems with his left hand. And, in response to his complaints, Plaintiff was allowed to see a hand specialist who ordered an X-ray. Dr. Lehman testified that the radiology report associated with the February 14, 2006 X-ray showed that Plaintiff's left hand was normal.

Pasirro Smith, a corrections officer assigned to Unit 32-C, testified that on the day of the incident the watch commander, Captain Patterson, and he were handling a flooding incident on another zone when they received a call that Scott had been assaulted on Tier 4, A-Zone. Smith said he accompanied Patterson and his team to Plaintiff's cell. Smith testified that Plaintiff initially refused to obey Patterson's order to approach the cell bars to be restrained. However, after another officer displayed a riot gun, Plaintiff complied with the officers' orders. Smith said when Patterson asked Plaintiff what happened to his hand, Plaintiff replied that nothing was wrong and that the injury was "something" he did himself. After this, Plaintiff was restrained and escorted from his cell to a holding tank.

Scott testified that she has been employed by the Mississippi Department of Corrections for fifteen years and currently holds the rank of sergeant at MSP. She testified that on the day of the incident she was conducting laundry call at Unit 32-C on Tier 4, A-Zone. Scott said when she approached Plaintiff's cell, he asked to use a marker. She said she handed Plaintiff a black marker and stood near his cell, waiting for him to mark his laundry with his name and cell

number. Scott said after a while, she asked Plaintiff to return the marker. Scott testified that instead of complying with her command, Plaintiff began to make lewd comments. Scott said she then made another request for the marker, but Plaintiff again ignored her and began rambling about some alleged "dealings" he had had with another officer. Scott said after this, she told Plaintiff that she was leaving and would be back. Scott testified that when she returned about five to six minutes later, Plaintiff resumed his rambling about the other officer and made an obscene gesture. Scott said she made another request for the marker, but Plaintiff again refused to return it to her. Scott said when she requested the marker a fourth time, raising her voice, Plaintiff threw it at her, hitting her on her hand. Scott said she then walked off the tier and reported the incident to her immediate supervisor and to Captain James Patterson.

Scott testified that during the incident with Plaintiff, she had nothing in her hands except the black marker. On cross-examination, Scott denied that she had an ink pen in her hand and denied that Plaintiff ever attempted to hand her the marker.

The elements necessary to prove an excessive force claim under § 1983 are a significant injury which resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable. *See Carter v. Fenner*, 136 F. 3d 1000, 1010 (5th Cir. 1998), citing *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir. 1989) (en banc). I find Plaintiff has failed to prove his claim that he was stabbed three times in the hand by Scott. Beyond Plaintiff's own testimony, there is no evidence supporting Plaintiff's claim that he was ever stabbed by Scott. To the contrary, the testimony of Scott and Smith rebut Plaintiff's claim that Scott stabbed him with an ink pen, and I find their testimony more credible. Indeed,

5

Plaintiff maintains he was stabbed three times in the "top" of his left hand and that he received three stitches in one wound and two in another. (Pl.'s Compl. p. 4.) However, Dr. Lehman testified that the medical records show that Plaintiff had wounds to the palm side of his hand and that he received only three stitches, two in one wound and one in another. Moreover, the surveillance video on which Plaintiff relies so heavily fails to show that Scott ever stabbed Plaintiff. Based on this, Plaintiff has failed to prove that any amount of force was used against him by Scott during the incident.

**THEREFORE, IT IS MY RECOMMENDATION** that this case be dismissed with prejudice and that all costs be taxed against Plaintiff.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this, the 24th day of May, 2007.

/s/ Eugene M. Bogen
**UNITED STATES MAGISTRATE JUDGE**